Court. My name is Rocky Cole and I represent the appellant in this matter, John Doe. This is a case that's typical than the run-of-the-mill Title IX case that this court sees from time to time. In that below, and we're asking for a remand of Judge Ebbinger's grant of summary judgment against Mr. Doe. What makes this different than the run-of-the-mill case is that Mr. Doe elicited direct evidence of sex discrimination at the appeal level through the appeal officer Keller, Richard Keller, which places this well within the type of case that this court decided in the University of Arkansas case. In looking at the University of Arkansas case that this court reversed a, essentially a petition that was dismissed at the motion to dismiss level, the court looked at whether it was against the weight of substantial evidence, whether there were procedural and investigative irregularities, and whether there was any external pressure that was connected in connection of this case. Even though this is at the level of summary judgment, the court should place significant weight on the University of Arkansas case in reaching its finding, in particular as it relates to pressure. This panel and other panels so frequently have denied claims to because so often the plaintiffs, and this is clear in the Rossley v. Drake case, they argue pressure in the abstract, the dear colleague letter, general campus climate. But what they fail to do is they fail to demonstrate and show directly how that pressure adversely outcome affected the proceeding in this case. And we have that, Your Honors. In this particular case, at the time Mr. Keller was deciding this case, he was the subject of a lawsuit relating to a failable exercise of discretion in relation to a male student. So we have pressure, we have a procedural irregularity, and we have a direct admission from Mr. Keller that he considered the sex of the accused, accuser, in finding that complainants one and two were more credible based upon their sex. What about this pressure? You're talking about the pressure, so help me understand that a little bit. What pressure specifically is Mr. Keller under? What's the link between what he was going through and his decision in your client's case? The particular lawsuit that he was subject to, Your Honor, was when Mr. Keller exercised discretion favorably in lowering a sanction for an accused male student in a very similar case. And he was named in a lawsuit, it was the Lane case. And you would ask in terms of pressure, in connecting it, the question is whether for purposes of summary judgment it's sufficient to support a finding to allow a jury to decide this. And that's exactly what the University of Arkansas case did. When you're at this stage, the record has to be construed in the light most favorable to the nonmoving party. Here, Mr. Keller admitted that he considered the sex of the accuser to make a favorable credibility determination in affirming the judgment. And that was error in this case. Now, Judge Ebinger Below said, so what? You didn't show that that affected the actual accuser, or the accused in this case. How does that show it? But for purposes of summary judgment, as Amicus points out, this at least allows a reasonable fact finder to show that the university considered sex, that is, the male sex of the accused in an adverse outcome. But the pressure is even more concrete. And here we lay this out very clearly at page 14 of our reply brief and page 37 of our substantive merits brief. Monique DiCarlo is the Title IX coordinator. In close proximity to this particular investigation, as well as adjudication, Ms. DiCarlo was part of numerous campus activities in connection with the climate on campus relating to females' complaints not being taken seriously. She made a number of public comments related to that. And again, but this is not in the abstract. What we showed in this particular case is that Tiffany Stevenson Earl, who was the investigator in this case, made an original determination that the accused in this case, Mr. Doe, would only have a public reprimand. And had that been the case, the case would have gone no further and it would have stayed at the level of a public reprimand. Through discovery, and this occurred after the disciplinary finding, we showed, and this is in contrast to the vast majority of cases in which Ms. DiCarlo and Ms. Reddington, who is essentially the dean at this time, advised that they thought that there should be an expulsion as opposed to a public reprimand. And what was the stated basis for that again in the record? So she considered aggravating circumstances because there were two as opposed to one. And that's what she said. But in deposition, as we pointed out to her in deposition, I said, well, what in the policy allows you to consider those factors to go from a reprimand, the lowest sanction, to the highest sanction, which is essentially expulsion from the university? She was not able to articulate a clear policy basis for that. Judge Ebinger took us to task because we did not actually cite anywhere in the policy at the University of Iowa that allowed this sort of intervention from a Title IX coordinator to an investigator. The reason why we didn't do that is there's nothing in the policy, at least that we're aware of, that allows such an intervention and that would allow this court, as well as in terms of questioning the partiality of this case. You're calling it an intervention. I kind of I sort of read it as a recommendation that there are people working on this case and sort of here's my input. Here's the input, but again, considering at the level of, that's what the University of Iowa would argue at trial. At the level that we're at at this point, where we're talking about public pressure, which is one of the factors that we're able to consider, and Monique DiCarlo making a recommendation to complainant two, who didn't even know that it was sexual assault, a jury should be allowed to make a finding that that in fact was pressure placed due to the fear of campus climate. Let me push on this pressure issue. She, Ms. DiCarlo, was part of some sort of education on campus, is that correct, to educate students? Yes. That alone doesn't seem to be enough. I mean, it's not uncommon in college campuses and universities for there to be that kind of education for students about to be aware of sexual assault and situations that they should bring to the attention of the administration. So what is it in particular about her involvement in that kind of educational process that a reasonable jury could see as, oh my gosh, I've got pressure to try to increase this particular person's sanction? Well, as we pointed out below before Judge Ebinger, it would have been perfectly fine to have programming on healthy sexuality and consent regardless of sex. But the particular pressure that she was feeling in leading these, and this is established at page 14 of our brief, specifically relates by lawsuits brought by women who are alleging that their complaints were not taken seriously. And this is precisely the type of campus climate that this court or another panel found persuasive in identifying that pressure connection that was established. And if anything, it was more because in the Arkansas case, there was no finding that there were actual adjudicators that were affected or investigators that were affected by the pressure. In contrast to this case, we have Mr. Keller, who is subject to a lawsuit, and additionally, we have Mr. Carla, who is also under pressure, and she basically admitted as much as far as that goes. Now, in terms of questioning the partiality and the procedure or regularity of this particular proceeding, one of the most amazing parts of this case is that at hearing, Mr. LaVaglia, who is the professor in this case, very clearly volunteered to the finder of fact, Iris Frost, that his recollection of all of what Complainant 1 had indicated was that it was all consensual, all consensual in terms of her complaint. Is the operative word there, all? Did he know about all of the conduct that later came out to have occurred? That was not developed at the hearing, and that's why it was discounted, but here's the critical point, Judge, is that in the investigative report, as well as the Iris Frost's report to ALJ, they didn't mention this at all. It was entirely ignored. It was an unexplained aspect to the case as to why it was entirely discounted. It was a difference between what Complainant 1 had indicated to the professor and what she had indicated later, and that was essentially a heuristic that was used by the judge in terms of inconsistent statements. And as we point out at the brief, the Doberlin case, if there's an unexplained irregularity that's not identified at all, that's relevant to whether there's a procedural irregularity in this case, and that was completely unexplained. The other piece of this case is that no one ever from the university ever explained during this initial stage why that wasn't assessed and why that wasn't addressed at all. The other part is that Tiffany Stevenson Earle was very clear in her finding the investigative report, and she was an investigator, that there's no sexual harassment, excuse me, based upon a power differential, and she excluded that from consideration. But at the level of the administrative law judge, she talked about the procedural irregularity, and that was part of the problem here, is that that was not developed at all. She found procedural irregularity at the hearing where they were cleared at the level of the investigative stage. So in relation to the procedural irregularity, that was never resolved at all. Did you have a question, Your Honor? Well, maybe I'm not understanding the process well enough, but to say he was cleared at the initial point with Tiffany Stevenson Earle, is that the right word, or is it just sort of a process that ultimately the decider is adjudicator Frost, and that that issue is in play, and she just saw it differently once she heard all of the testimony? No one appealed that the charging document, that particular claim, was not brought in relation to the hearing. So the answer is no one appealed that, either the complainants or the university, and it was not addressed at all as far as that goes. Is it a claim, or is it just, help me understand, because your client was found responsible for certain violations of certain code, but is this a freestanding claim, or that there was an expressed finding of responsibility for by the adjudicator? She did not find an expressed finding of responsibility for that, nor could she, because it was not actually found by the adjudicator. She needed a finding by the adjudicator to try to be able to get to the hearing, and she did not do that. The other thing is, in terms of the adjudication by Iris Frost, she used a number of sex-based stereotypes that were not present in the record. For example, she made sex-based stereotypes relating to Complainant 2, straddling him and said that it was just Doe's fantasy as a way to discount what he had said. The problem with that is there was nothing in the record to support that he was engaging in fantasy. It was just because his version differed from her version, and that unto itself was an insufficient basis upon which to find that. The other thing is, is that there was also a sex-based stereotype in terms of the punching and kicking. That also was not part of the record at all, either at the investigative stage, at the adjudicative stage, or anything else, yet Ms. Frost was enlisting those questions. So based upon all of those factors, we think this case tracks very well the three factors that were identified in the Arkansas case, and I'll reserve the remaining portion of my argument for rebuttal. Thank you. May it please the Court. Mr. Cole is a little bit taller than me, so I had to make some adjustments. Your Honors, my name is Kayla Burkheiser Reynolds. I'm honored to be here today to represent the University of Iowa, the Iowa Board of Regents, and the individual defendants in this case. As Mr. Cole noted, this case arises from a student misconduct proceeding at the University of Iowa, which found that Mr. Doe had sexually harassed and sexually assaulted two undergraduate women during the 2016-2017 academic year. Mr. Doe was expelled from the University as a result of this process. Today, we're not asking you to re-adjudicate Mr. Doe's student misconduct hearing, or to find that his behavior toward the two complainants was without fault. That question is not before you today. As this Court knows, Title IX is not an invitation for courts to second-guess university disciplinary decisions. Rather, we have just two issues for you today. First, whether Doe generated a genuine issue of material fact on the question of whether he was expelled because of his sex. The second, whether the District Court erred when it dismissed his procedural due process claims granting qualified immunity to defendants Frost and Shriver-Cervantes. Mr. Doe also... Counselor, could I start at the end there on the procedural due process? What is your view on what you said? And maybe I interrupted you before you were going to finish what you were going to say, but you said qualified immunity as to the individual defendants. What about the procedural due process against the university, the non-individual defendants? That's not a qualified immunity analysis, right? That's the injective relief. What did the District Court rule on there? What's before us on that particular claim? The District Court ruled that there was no violation of Doe's constitutional rights by the University of Iowa. So the qualified immunity portion... So his procedural due process claim has two parts. It's notice, and then he claims also that the hearing and the process that he received was fundamentally unfair. So what the District Court did was dismiss the notice portion against Frost and Shriver-Cervantes based on qualified immunity. Defendants then renewed our motion to dismiss the remainder of the procedural due process claim at summary judgment. For the injunctive relief, declaratory relief. Correct, yep. So first, I'd like to address Mr. Doe's Title IX claims. As this Court knows... I'd like to go to the procedural due process again and follow up on your colleague's argument. What about this argument that one of the complainants, I think Complainant 1, made comments to a professor, and I forget the professor's name, basically indicating that they were consensual, that the interaction was consensual. How do you respond to that, and how do you respond to the fact that apparently that shows up nowhere in the proceedings that the university ultimately conducted here? Certainly, Your Honor. I think the professor kind of walked it back, right? In other words, like, well, maybe I made assumptions. But it still seems to me to be a fairly important fact that should have been addressed, or may have been addressed. Certainly, Your Honor. So my understanding of what happened is that Complainant 1 went to Professor Lavaglia in the fall of 2016 and complained essentially that Mr. Doe had been sexually harassing her. He was seeking a romantic relationship with her, which was not wanted. She wanted him to stop. She wanted to participate in the lab without being harassed. Dr. Lavaglia discussed that complaint with Doe without indicating who had complained. He thought the situation was handled. A couple of months later, in February of 2017, Complainant 1 returned to Dr. Lavaglia's office and said, hey, this guy won't leave me alone. He's continuing to harass me. Back in the fall, I went to his apartment, and we were kissing, and some things happened. And, you know, some things that I didn't want to happen happened. So Dr. Lavaglia took that to the Title IX officer at the university. Was it specifically, and you may be correct, some things that I didn't want to have happen, or that I regret having participated in? Or do you recall what the record says? I don't off the top of my head. So I think the most helpful thing for the court to look at would be Tiffany Stevenson Earle's notes from the investigation. And I wish that I had a pin site for you, Your Honor. I don't know that I do. And in her notes, and you'll also find this in Constant Shriver-Cervantes' notes, because the two of them were present at Dr. Lavaglia's interview. They write some things. She told me that Doe wouldn't leave her alone, et cetera, et cetera. Then at the top of the page, there's a note that says Complainant 1 pushed Doe away. So I think even from the very beginning of the investigation into this matter, there's evidence that Complainant 1 did not tell Dr. Lavaglia that everything was consensual. There's also evidence from Complainant 1 at the hearing that she didn't even tell Dr. Lavaglia about the breast grope. He's an older male professor. She doesn't know him. She's embarrassed. She's concerned about her role in the lab. So there's some testimony from her that she didn't even disclose that to Dr. Lavaglia. So to your point, Judge Kelly, I think there's a lot of evidence in this case that Dr. Lavaglia didn't even have all of the information. And again, to your point, Judge Kobus, at the hearing, and I think if you read through Dr. Lavaglia's testimony in the transcript, it's clear that he's sort of waffling on whether, and he's correct about this. I think she conveyed to me the idea that it was all consensual. I hope I'm not wrong about that. I hope I haven't done anything to exacerbate this problem. And counsel asked Iris Frost in her deposition why she didn't include that in her adjudicator's decision. You know, this seems to be important information. Why didn't you include it? Ms. Frost's response was exactly that. Based on my credibility determination of Dr. Lavaglia, he seemed to be really waffling here. This didn't seem to be cut and dried. So she had some credibility concerns about that. And I think that she explained that all in her deposition testimony. So I would disagree with the fact that Mr. Cole stated that that's not addressed in the record. I think that it is. What about the general pressure? I think it's almost undeniable that there is a lot of concern and discussion about sexual assaults and unwanted sexual conduct on university campuses. And if in this particular case you have a couple of people who are either involved in another case and getting some pressure about the decision they made, or maybe there's someone who is actually doing this education, why isn't that something that should be factored in here to determine whether they did feel a little pressure to up this sanction and maybe go a little harder on this young man than others? Absolutely, Your Honor. So I was also counsel in the Lange case. So I'll try to stay with what's in the record in this case and be very careful about that. Counsel is entirely correct that Dean John Keller was named in another lawsuit brought by a female complaining party around the same time. It's unclear to me when Dean Keller would have received those documents and how that timeline works out. However, from my perspective, the fact that Dean Keller testified during his deposition that he has found in favor of female complaining parties, he's found in favor of male responding parties. And I hope this doesn't sound flip, but he testified that no matter what I find, there's going to be an unhappy party. Someone might sue me, right? And so I think that that's something that we see not just at the University of Iowa, but in these types of cases in general. There's a lot of litigation brought by parties who didn't get the result that they wanted. In addition, counsel explored this topic with all of the defendants in their depositions. Did you have any particular reason to feel pressure from the outside? Did anyone higher up ask you questions about this? And all of them said no. All of them said, you know, we're working on the cases before us. We want this to be a fair process for everyone because ultimately both parties are students at the University of Iowa. They have no reason to favor one over the other. Is the record show the nature of the education or the outreach that was going on at the university? And in particular, was it gender-focused or was it gender-neutral relatively? Your Honor, I disagree with Mr. Cole that there's any substantial evidence in this record that the University of Iowa was sort of putting forth messages based on sex. As far as I'm aware, all the policies are gender-neutral. The trainings, they present statistics about the number of women who are assaulted and the number of men who are assaulted. From my perspective, there's no reason for this court to believe that the University of Iowa was favoring women or against men. In this case, in trainings, in Monique DiCarlo's statements, none of it. I just don't think it's supported. So back to the Title IX piece of this claim. Doe and the amicus save argue that Dean Keller's testimony is direct evidence of discrimination sufficient to defeat the university's motion for summary judgment? Save, the amicus particularly argues that this court should apply the Price-Waterhouse standard to Title IX claims. As this court knows, Price-Waterhouse is the case that articulated the test used in evaluating Title VII employment discrimination claims that are supported by direct evidence of discrimination. This circuit hasn't adopted McDonnell-Douglas or Price-Waterhouse frameworks for analyzing Title IX claims, and it shouldn't do so now. That issue isn't before you in this appeal. Rather, this court has articulated a different standard. In Doe v. University of Arkansas at Fayetteville, this court rejected the USIF categories. I don't know if the court recalls there were separate categories to prove up Title IX claims. One of them was an erroneous outcome claim, which did use motivating factor language, but that was specific to that type of Title IX claim. So under the Purdue standard cited in the University of Arkansas case, this court asks whether the alleged facts, if true, raise a plausible inference that the university discriminated against the plaintiff on the basis of sex. It's clear that this circuit uses a totality of the circumstances analysis and that that analysis is a but-for question. So Doe and Unicus argue that Dean Keller all but admitted that he decided Doe's appeal on the basis of sex. This simply isn't the case. Unicus trimmed down 16 pages of deposition testimony to a one-liner, completely stripped of context. The testimony at issue doesn't reveal that Dean Keller was biased against male students and in favor of female students, or show that he made his ultimate decision on the basis of sex. I want to walk you through, in three minutes, I want to walk you through the context of what Dean Keller actually said. The conversation arose in the context of various hypothetical questions that counsel posed about Dr. LaValia's testimony, which we just discussed. Dean Keller first told counsel that he didn't recall the specifics of LaValia's testimony. It had been three years since he looked at the case and he just didn't remember exactly what LaValia said. Counsel pointed out that LaValia's testimony only really related to one finding, that Doe had sexually assaulted Complainant 1 and wasn't related to the entirety of the appeal. Dean Keller then described in detail his concerns about the power differential between Doe and the two undergraduate complainants. Specifically, he brought up Doe's position as a graduate student, the complainant's view of him as the lab leader, and the fact that the complainants didn't want to get Doe into any trouble. The discussion of sex arose when Keller was talking about what I believe was consent. He said, quote, I suspect that nobody asked for those particular actions and there was no verbal affirmative. And I think, you know, my experience with younger students, particularly females, is that they're sort of surprised about what might be taking place and don't know exactly how to respond. So things happen without them really engaging in any kind of, you know, verbal or physical indication that there's approval, unquote. In this section, Keller relays his observations, perhaps unartfully, that younger or inexperienced students do not necessarily understand that silence or lack of resistance does not mean consent. Keller specifies female students, but later explains that all of his experience in these cases has been with female complaining parties and male responding parties. So it makes sense that he... So he, so Mr. or Dean Keller had never had a case where the complaining party was a male? Correct, Your Honor. He hadn't had a case like that on appeal. And we turned over a bunch of information about the complaints that the university had during this time period. And there were a few female responding parties. But what we saw was that the female responding parties tended to withdraw from the university before the case went to formal hearing. So I think statistically it's true that there weren't a lot of female complaining parties that would go through formal hearing. As this Court knows, bias to the extent there is one toward a responding or complaining party is not the same thing as gender bias. Dean Keller goes on to reiterate his concerns about the power differential between Doe and the young complainants multiple times. So is it your position that yes, he did rely on sex, but he relied on other factors more? I mean, is that how we look at it? Is it, you can't really excise, you can't excise the word particular, words particularly females out of that statement. Yeah, you can put it in the context, but it's still there. Yes, I agree with you, Your Honor. The fact, and I see my time is up. May I continue to respond? Yes, please. Okay, so the fact that he is discussing his observations over the course of 15 years in which all of the people he's observed have been females, but also the fact that this is such a small part of the appeal analysis that he is doing. It's only related to whether or not he considered Dr. LaVaglia's testimony to be convincing, and then taking that in the whole picture, LaVaglia's testimony played such a small part of the hearing. So I think even to the extent, and this is what the district court found, to the extent that you see that as evidence of gender bias, it's not anywhere close to sufficient to convince a rational trier of fact that they should rule in Doe's favor. Thank you very much for your time. Thank you. Mr. Cohn? Your Honors, LaVaglia's testimony was the only neutral witness that indicated that there was consensual activity. And to your question, Your Honor, at page 8 of our reply brief, we lay out in detail what was said by Mr. LaVaglia. He was very clear, he said, did she tell you it was a consensual kiss? Yes. Did she tell you that he touched her bust? I don't remember that. Now, the University of Iowa and the district court sort of say, well, it's kind of not a big deal because it was in no rational trier of fact, but there was only three factors they looked at, the power, the age, and the sex of the accuser. In the context of summary judgment, it's perfectly appropriate, construing the light most favorable to Mr. Doe, that that was a procedural irregularity to allow sex finding, that essentially that there was a discrimination that occurred in this case for purposes of Title IX and summary judgment. So I think that is not ambiguous. That is very clear. And that is why we believe that the court prematurely dismissed this case without considering these direct factors. And in this Arkansas, the court specifically found that an unexplained procedural irregularity is part of a prima facie case of circumstantial evidence. And that's what we have in this case. They did not explain in the decision itself why they did not address the most critical piece of evidence, which was Mr. Lavaglia. Thank you.